IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN HUNT, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16 C 2255 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| JP MORGAN CHASE & CO., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kevin Hunt has sued his former employer, JP Morgan Chase & Co., alleging that defendant failed to rehire him as a Branch Sales Center Lending Manager ("BSC Lending Manager") because of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. Defendant has moved for summary judgment. For the reasons described below, defendant's motion is granted.

## BACKGROUND

Plaintiff, a sixty year-old male, began working for defendant as a mortgage consultant in July 2001. By all accounts he was an excellent employee and was promoted to Lead Mortgage Consultant and then Senior Lead Mortgage Consultant. In January 2008, he was promoted to Lending Manager at defendant's Branch Sales Center ("BSC") in Downers Grove, Illinois. As a BSC Lending Manager, plaintiff worked in a call center managing mortgage bankers who worked with personal bankers, branch managers, and district managers who did not have mortgage bankers within their district to originate mortgages.

In October 2011, defendant's Vice President Eric Andrews-Sharer promoted plaintiff to BSC Senior Lending Manager. Plaintiff was 55 years-old at that time. As a BCS Senior

Lending Manager, plaintiff oversaw a team of three lending managers who, in turn, each supervised a team of mortgage bankers.

In April 2012, Andrews-Sharer told plaintiff that defendant wanted to grow the Consumer Direct Department and that Andrews-Sharer wanted plaintiff to head a Consumer Direct Department at Downers Grove. In May 2012 plaintiff became a Consumer Direct Lending Manager in the new Consumer Direct Department. "Consumer Direct" is a call center staffed with mortgage bankers and lending managers who were contacted directly by consumers inquiring about a mortgage. Plaintiff oversaw a team of mortgage bankers who answered incoming calls from consumers.

In June 2013, afer a downturn in the market, defendant closed the Consumer Direct Department. Plaintiff became a Retail Lending Manager. Andrews-Sharer found the position for plaintiff through his connection with the manager of that position. As a Retail Lending Manager, plaintiff oversaw mortgage bankers who sat in 14 different retail bank branches, and worked with personal bankers to originate mortgage applications for both purchases and refinances.

In February 2014, plaintiff was laid-off as part of a reduction in force ("RIF") due to a market turn and downsize of the company. Plaintiff was placed on "talent reassignment," a program through which defendant assists laid-off employees with finding another position with defendant. Plaintiff was 59 years-old at that time.

In April 2014, a BSC Lending Manager position became available. Plaintiff applied for that position. Plaintiff first interviewed with Senior Lending Managers Scott Neri and Thomas Croy, and then with Andrews-Sharer, the ultimate decision maker. Neri and Croy recommended

two candidates to Andrews-Sharer. According to Croy, who claims not to have had hiring authority, plaintiff was his first choice, and 37 year-old Robby Kane was his second choice. It is undisputed that plaintiff was Neri's first choice, but neither Neri's nor Croy's recommendations were documented.

Andrews-Sharer interviewed both plaintiff and Kane and determined that plaintiff was the more qualified. He offered the position to plaintiff and plaintiff signed an acceptance letter on June 4, 2014. The offer was contingent on plaintiff passing defendant's required pre-employment screening, consisting of a criminal background check and regulatory credit review. Plaintiff failed the regulatory credit review because he had nine accounts in collection that were delinquent over 90 days. Plaintiff attempted to supply mitigating circumstances, but defendant's Global Security & Investigation Department determined that plaintiff's explanations did not qualify as mitigating circumstances and, as a result, plaintiff's offer was revoked. Neither Andrews-Sharer nor Neri had any involvement in the screening process, and neither had authority to alter the decision to revoke the offer. As a result, Kane was offered the position.

In late 2014 or early 2015 another BCS Lending Manager position became available. Once again plaintiff applied and interviewed with both Croy and Neri. Neri and Andrews-Sharer were the hiring managers for the position. Croy provided input. Plaintiff claims that he first interviewed with Croy alone, and then Neri joined them. While alone with Croy, plaintiff claims that Croy stated to him "I'm almost 50 and I barely have enough energy to do the job myself, I know you are a lot older than I am. How are you at your age going to have the energy to do this job?" Both Croy and Neri deny that Croy was ever alone with plaintiff, and Croy denies making

3

the statement. Croy also stated in his deposition that plaintiff was his first choice and that he told both Neri and Andrews-Sharer that.

Neri and Croy interviewed both plaintiff and Stacy Kopecky, a Retail Lending Manager who had not been in the pool of candidates for the earlier 2014 position originally offered to plaintiff. Neri testified that he considered Kopecky to be the number one candidate with plaintiff number two, and told Andrews-Sharer that. Andrews-Sharer then interviewed Kopecky. Andrews-Sharer claims that he also interviewed plaintiff, but plaintiff says Andrews-Sharer did not conduct a third round interview with him. Andrews-Sharer offered the position to Kopecky, claiming that he liked her retail experience, hoping that she would help develop business. Kopecky was approximately 40 years-old at that time.

## **DISCUSSION**

Defendant has moved for summary judgment on plaintiff's claim. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of establishing both elements, Becker v. Tenebaum-Hill Associates, Inc., 914 F.2d 107, 110 (7th Cir. 1990), and all reasonable inferences are drawn in the non-movant's favor. Fisher v. Transco Services - Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992). If the movant satisfies its burden, then the non-movant must set forth specific facts showing there is a genuine issue for trial. Nitz v. Craig, 2013 WL 593851, *2 (N.D. Ill. Feb. 12, 2013). In doing so, the non-movant cannot simply show some metaphysical doubt as to the material facts. Pignato v. Givaudan Flavors Corp., 2013 WL 995157, *2 (N.D. Ill. March 13, 2013) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). Summary judgment is inappropriate

4

when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Plaintiff claims that he was denied the 2015 BSC Lending Manager position because of his age, in violation of the ADEA. Generally, a plaintiff making such a claim can defeat summary judgment in one of two ways. First, the plaintiff can point to sufficient evidence in the record, whether called direct, indirect, or circumstantial, from which a reasonable jury could conclude that the defendant did not hire him because of his age. This is the standard way to defeat summary judgment as recently reiterated in Ortiz v. Werner Enterprises, Inc., 834 F.3d 760, 764 (2016) (overruling the use of a "convincing mosaic" test.). Under this test, "evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself – or whether just the 'direct' evidence does so, or the 'indirect' evidence. . . . Relevant evidence must be considered and irrelevant evidence discarded, but no evidence should be treated differently from other evidence because it can be labeled 'direct' or 'indirect.'" Id. at 765.

A plaintiff may also attempt to defeat summary judgment using the burden shifting framework created in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). This framework is simply "a means of organizing, presenting, and accessing circumstantial evidence infrequently recurring factual patters found in discrimination cases." Celeste David v. Board of Trustees of Community College Dist. 508, __ F.3d __, 2017 WL 129114 (7th Cir. Jan. 13, 2017). Under this approach,the plaintiff must first present evidence to establish a prima facie case of discrimination: (1) that he is a member of a protected class; (2) he was satisfying his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated

5

employees outside the protected class were treated more favorably. If the plaintiff satisfies this initial burden, then the employer must articulate a legitimate non-discriminatory reason for the adverse action. The burden then shifts back to the plaintiff to submit evidence that the employer's decision is pretextual. See Andrews v. CBOCS West, Inc., 743 F.3d 230, 234 (7th Cir. 2014) (overruled on other grounds by Ortiz, 834 F.3d at 765-66). Whichever method is used, "the fundamental question at the summary judgment is simply whether a reasonable jury could find prohibited discrimination." Bass v. Joliet Public School Dist. No. 86, 746 F.3d 835, 840 (7th Cir. 2014).

In the instant case, the answer to that fundamental question is no. First, plaintiff's only evidence of age discrimination is his claim that Croy asked him how he would have the energy to do the job. Croy denies this statement, but even if he made it, it is undisputed that Croy was not the decision maker, and plaintiff has no evidence to dispute Croy's statement that plaintiff was his first choice. Nor is there any evidence that Andrews-Sharer, who made the ultimate decision, was aware of the statement. There is also no evidence that Andrews-Sharer, who had helped plaintiff in the past and had just offered him the same position a few months earlier, held any animus towards plaintiff because of his age.

Plaintiff attempts to create an issue by arguing that Neri's evaluations of plaintiff's abilities decreased slightly from the 2014 interview to the 2015 interview, and that defendant's response letter to the EEOC misrepresented slightly both plaintiff and Kopecky's 2011 evaluations. Even if plaintiff could establish that the slight misrepresentations were intentional, they are immaterial. Defendant has never questioned plaintiff's qualifications for the position. Andrews-Sharer obviously considered plaintiff qualified; he had just offered plaintiff the

6

position a few months earlier. Indeed, when asked why he thought his age had to be the reason he was not awarded the position, plaintiff said that it had to be based on his age because he was the most experienced and qualified, and he could conceive of no reason why he would be offered the position in 2014 and not in 2015. Of course, Kopecky had not applied for the position in 2014, and plaintiff offers no evidence that Andrews-Sharer (or Neri) did not chose her because of her extensive retail experience.

This lack of evidence also dooms plaintiff's case under <u>McDonnell Douglas</u>. Assuming he can establish a prima facie case because he is a member of a protected class, was qualified for the position, did not get it, and someone much younger did, he cannot establish that defendant's reason for the decision is pretextual. There is simply no evidence from which a reasonable jury could conclude that Andrews-Sharer's statement that he chose Kopecky for her different experience is a lie, and that the real reason is that he wanted someone younger. Absent such evidence, plaintiff cannot survive summary judgment.

## **CONCLUSION**

For the reasons described above, defendant's motion for summary judgment (Doc. 29) is granted.

**ENTER:** **January 19, 2017**

_____
   **Robert W. Gettleman**
   **United States District Judge**

7